# Matter of M-B-C-, Respondent

*Decided May 18, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where the record contains some evidence from which a reasonable factfinder could conclude that one or more grounds for mandatory denial of an application for relief may apply, the alien bears the burden under 8 C.F.R. § 1240.8(d) (2016) to prove by a preponderance of the evidence that such grounds do not apply.

FOR RESPONDENT: Simon Tsang, Esquire, Tampa, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: James E. M. Craig, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, MULLANE, and LIEBOWITZ, Board Members.

MULLANE, Board Member:

In a decision dated March 12, 2015, an Immigration Judge denied the respondent's request for a waiver of deportability under section 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H) (2012), and his applications for asylum and withholding of removal under sections 208 and 241(b)(3) of the Act, 8 U.S.C. §§ 1158 and 1231(b)(3) (2012).[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Bosnia-Herzegovina who was admitted to the United States as a refugee on September 29, 1998. On January 15, 2002, his status was adjusted to that of a lawful permanent resident. On August 25, 2011, the Department of Homeland Security ("DHS") initiated removal proceedings by filing a notice to appear charging that the respondent is removable under section 237(a)(1)(A) of the Act as an

---

[1] Although the respondent applied for additional forms of relief from removal during the proceedings, he has only meaningfully challenged the Immigration Judge's decision to deny his request for a section 237(a)(1)(H) waiver and his applications for asylum and withholding of removal. We consider any issues regarding the other forms of relief to be waived. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012).

alien who was inadmissible at the time of entry or adjustment of status under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2012), as an alien who procured admission and adjustment of status by fraud or willful misrepresentation of a material fact, and under section 212(a)(7)(A)(i)(I) as an immigrant who did not present a valid passport. These charges were based on allegations that the respondent omitted information about his military service during the Bosnian War from both his Registration for Classification as Refugee (Form I-590) and his Application to Register Permanent Residence or Adjust Status (Form I-485). The respondent conceded removability and applied for, among other things, a waiver of deportability under section 237(a)(1)(H) of the Act, asylum, and withholding of removal.

The Immigration Judge heard testimony from the respondent and from Michael MacQueen, a senior historian in the Human Rights Law Division of the DHS, who testified as a subject-matter expert on the Bosnian War. In her decision, the Immigration Judge found that the respondent was not a credible witness and denied all of his applications for relief. Specifically, the Immigration Judge denied the respondent's application for a section 237(a)(1)(H) waiver after determining that he did not meet his burden of establishing that he is not barred from such relief as an alien who assisted or otherwise participated in genocide or as an alien who committed, ordered, incited, assisted, or otherwise participated in the commission of any extrajudicial killing. The Immigration Judge also denied the respondent's applications for asylum and withholding of removal, concluding that he is subject to the persecutor bar in sections 208(b)(2)(A)(i) and 241(b)(3)(B)(i) of the Act.

On appeal, the respondent challenges the Immigration Judge's adverse credibility determination. He also argues that the Immigration Judge erred in concluding that he is barred from seeking a section 237(a)(1)(H) waiver based on his activities during the Bosnian War. Additionally, the respondent contends that the Immigration Judge improperly determined that he is ineligible for asylum and withholding of removal. We review the Immigration Judge's findings of fact, including her findings regarding the respondent's credibility, to determine if they are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2016). We review de novo questions of law, discretion, and judgment, and all other issues on appeal. 8 C.F.R. § 1003.1(d)(3)(ii).

## II. LEGAL STANDARDS

The Attorney General may, pursuant to section 237(a)(1)(H) of the Act, waive the removability of certain aliens who are inadmissible at the time of

entry or adjustment of status. However, such a discretionary waiver is unavailable to any alien described in section 237(a)(4)(D), which includes those described in sections 212(a)(3)(E)(ii) and (iii)(II) of the Act.

Section 212(a)(3)(E)(ii) of the Act renders inadmissible any alien who ordered, incited, assisted, or otherwise participated in "genocide," as defined in 18 U.S.C. § 1091(a) (2012), which provides, in relevant part:

> (a) Basic Offense.—Whoever, whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such—
>     (1) kills members of that group;
>     (2) causes serious bodily injury to members of that group;
>     (3) causes the permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques;
>     (4) subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part;
>     (5) imposes measures intended to prevent births within the group; or
>     (6) transfers by force children of the group to another group;
> shall be punished . . . .

Section 212(a)(3)(E)(iii)(II) of the Act renders inadmissible "[a]ny alien who, outside the United States, has committed, ordered, incited, assisted, or otherwise participated in the commission of . . . under color of law of any foreign nation, any extrajudicial killing." For purposes of this section, the term "extrajudicial killing" is defined as

> a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation.

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73.

The respondent has the burden to establish that he satisfies the applicable eligibility requirements for his applications for relief from removal. *See* section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A) (2012). "If the evidence *indicates* that one or more of the grounds for mandatory denial of the application for relief *may apply*, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d) (2016) (emphases added).

## III. ANALYSIS

### A. Credibility

We are not persuaded of any clear error in the Immigration Judge's adverse credibility determination, which is based on specific and cogent reasons, including inconsistencies in the respondent's testimony, as well as an implausible aspect of his testimony. *See* section 240(c)(4)(C) of the Act; *see also* section 208(b)(1)(B)(iii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. 260, 262 (BIA 2007).

This case involves events that occurred during the Bosnian War, a conflict arising from the dissolution of the former Yugoslavia. The war was fought along ethnic lines between the Army of the Republic of Srpska ("VRS"), which was primarily composed of Eastern Orthodox Serbs; the Army of the Republic of Bosnia and Herzegovina, a group that was mostly made up of Muslim Bosniaks; and the Croatian Defense Counsel, which was mostly composed of Roman Catholic Croats. Mr. MacQueen explained that the war was largely waged against the civilian population and was characterized by ethnic cleansing. Early in the war, the Serbs were able to dominate most of Bosnia and Herzegovina, but Bosniaks secured pockets of resistance, including areas in and around the Bosnian city of Srebrenica. In July 1995, the VRS commenced an offensive against Srebrenica, which ultimately resulted in the forced removal of 25,000 women and small children and the massacre of approximately 8,000 men and boys.

Mr. MacQueen testified that the respondent served in the VRS in the town of Ilijaš from May 1992 until July 1992. In July 1992, the respondent assumed a leadership role as company commander in the Bratunac Light Infantry Brigade, where he served until the fall of 1993. The respondent then joined the Ministry of Internal Affairs Bratunac Police, where he served until the fall of 1994. He served in the Janja Special Police from November 1994 until June 1996.

According to Mr. MacQueen, VRS soldiers engaged in summary executions in and around Ilijaš during the time that the respondent was stationed there. He testified that when the respondent served in the Bratunac Light Infantry Brigade, the unit was involved in the systematic expulsion of the civilian population and the killing of hundreds, if not thousands, of Muslim civilians. Mr. MacQueen further testified that the special police units from Janja were deployed in the area of operations of Srebrenica during the July 1995 massacre and were involved in killing and capturing Muslim civilians who attempted to escape.[2]

---

[2] According to Mr. MacQueen, the Bratunac Police did not commit any significant human rights abuses during the respondent's service from the fall of 1993 to the fall of 1994.

The respondent testified that he served in the VRS from 1992 to 1993. Although he denied possessing an "official" rank, he confirmed that he was elevated to the position of company commander in the Bratunac Light Infantry Brigade and that he commanded approximately 100 soldiers in that role. He claims to have never had a part in capturing, killing, or forcibly expelling civilians during his service in the VRS. The respondent also confirmed that he was transferred to the Bratunac Police in late 1993.

The respondent denies that he served with the special police in Janja, testifying instead that he served in Janja's reserve police force. This testimony is inconsistent with that of Mr. MacQueen, as well as documentary evidence in the record. The record contains a decision prepared by the Municipality of Bijeljina Department of Veterans and Civil Protection, certifying that the respondent served as a member of the "Ministry of Internal Affairs of the Republic of Srpska, Local Police Unit Janja," from November 1994 until June 1996. Mr. MacQueen testified that the English translation of this document is incorrect and that the original Serbo-Croation document indicates that the respondent served in the Janja special police. The respondent concedes that this is the case on appeal.

The record also contains photographs showing the respondent wearing a uniform that Mr. MacQueen testified was indicative of service in the special police. Finally, the respondent submitted written pleadings admitting the factual allegations contained in the notice to appear, including the allegations that he served in the Ministry of Internal Affairs Special Police Brigade. In light of this evidence, we are not persuaded of any clear error in the Immigration Judge's finding that the respondent served in the special police force in Janja from November 1994 until June 1996, and we agree that the respondent's testimony to the contrary undermines his credibility as a witness.

When questioned, the respondent testified that he had never heard of any Muslim civilians being captured, killed, or forced to leave their homes during the time of his service, apart from some incidents that occurred on the other side of Bosnia. We agree with the Immigration Judge that it is implausible that the respondent would be ignorant of the human rights abuses that occurred in and around Ilijaš during the time of his service in the VRS or of those committed by members of the Bratunac Light Infantry Brigade when he served with that group. It was reasonable for the Immigration Judge to conclude that the respondent's professed ignorance of such abuses further undermines his credibility as a witness.

In view of the foregoing inconsistencies and the implausibility of the respondent's testimony, and upon consideration of all relevant evidence, we conclude that the Immigration Judge's adverse credibility determination is not clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i).

## B.  Extrajudicial Killing

The respondent has not offered any evidence to rebut or otherwise challenge the accuracy of the description of events outlined by Mr. MacQueen—namely, the summary executions (1) in and around Ilijaš between May and July 1992; (2) in and around Bratunac between July 1992 and November 1993; and (3) in and around Srebrenica in July 1995.  The respondent also has not meaningfully challenged the Immigration Judge's determination that these events constitute extrajudicial killings within the meaning of section 212(a)(3)(E)(iii)(II) of the Act.  In addition, the respondent concedes that he operated under color of law throughout his police and military service.  Nevertheless, the respondent contends that the record evidence is insufficient to indicate that he may have committed, ordered, incited, assisted, or otherwise participated in the commission of any extrajudicial killings because the DHS has not provided any direct evidence that he was ever personally involved in or aware of the summary executions and other human rights abuses outlined above.

It is well settled, however, that the terms "committed, ordered, incited, assisted, or otherwise participated" under the Act "are to be given broad application" and "do not require direct personal involvement in the acts" in question.  *Matter of A-H-*, 23 I&N Dec. 774, 784 (A.G. 2005), *remanded on other grounds*, *Haddam v. Holder*, 547 F. App'x 306 (4th Cir. 2013).  Rather, "there is a continuum of conduct ranging from passive acceptance, which does not meet the legal standard, to active, personal participation, which clearly does."  *Matter of D-R-*, 25 I&N Dec. 445, 453 (BIA 2011), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).  We have concluded that an alien is inadmissible under section 212(a)(3)(E) of the Act where it is established that "an alien with command responsibility knew or should have known that his subordinates committed unlawful acts covered by the statute and failed to prove that he took reasonable measures to prevent or stop such acts or investigate in a genuine effort to punish the perpetrators."  *Id.*

Moreover, unlike *Matter of D-R-*, where the DHS bore the burden of demonstrating the alien's removability under section 237(a)(4)(D) of the Act by clear and convincing evidence, in this case we must determine whether the respondent is ineligible for a section 237(a)(1)(H) waiver.  Thus, the relevant inquiry under 8 C.F.R. § 1240.8(d) is whether *the evidence indicates* that the grounds for mandatory denial in sections 212(a)(3)(E) and 237(a)(4)(D) of the Act *may apply* to him so that he then has the burden to show that they do not apply.

In using the terms "indicates" and "may apply" together, 8 C.F.R. § 1240.8(d) does not create an onerous standard and necessarily means a

showing less than the preponderance of the evidence standard. Otherwise, the regulation would have simply employed the preponderance standard. Accordingly, we hold that where the record contains some evidence from which a reasonable factfinder could conclude that one or more grounds for mandatory denial of the application may apply, the alien bears the burden under 8 C.F.R. § 1240.8(d) to prove by a preponderance of the evidence that such grounds do not apply.

The decision of the United States Court of Appeals for the Eighth Circuit in *Maric v. Sessions*, 854 F.3d 520 (8th Cir. 2017), supports our holding in this regard. In that case, the court ruled that under 8 C.F.R. § 1240.8(d), once evidence is presented that "indicates" that an alien "may have participated in . . . extrajudicial killings," the alien bears the burden of proving "by a preponderance of the evidence that the statutory bar in [section 212(a)(3)(E)(iii)] did not apply." *Id.* at 523.

Mr. MacQueen's testimony establishes that local VRS units were responsible for the extrajudicial killings that occurred in and around Ilijaš between May and July 1992 and that the Janja Special Police were responsible, in part, for the extrajudicial killings that occurred in and around Srebrenica in July 1995. The record further establishes that the respondent served in the VRS in Ilijaš between May and July 1992 and that he served in the Janja Special Police in July 1995.

We agree with the Immigration Judge that the respondent's service in the VRS, in a location where VRS soldiers engaged in extrajudicial killings and during the time those extrajudicial killings occurred, is sufficient to indicate that he may have committed, ordered, incited, assisted, or otherwise participated in those extrajudicial killings and that he therefore may be an alien described in section 212(a)(3)(E)(iii)(II) of the Act. The respondent therefore bore the burden of proving by a preponderance of the evidence that he is not an alien described in that section. The sole evidence offered by the respondent to meet this burden is his testimony that he had no knowledge of any extrajudicial killings that occurred in or around Ilijaš during the time in question. We agree with the Immigration Judge that this testimony, which lacks credibility, is insufficient to meet the respondent's burden.

Similarly, the respondent's service in the Janja Special Police, in a location where its members engaged in extrajudicial killings and during the time they occurred, is sufficient to indicate that he may have committed, ordered, incited, assisted, or otherwise participated in those extrajudicial killings. His incredible testimony denying that he served in or around Srebrenica at that time is insufficient to meet his burden to prove by a preponderance of the evidence that he did not engage in any of extrajudicial killings that occurred there.

Mr. MacQueen's testimony and the documentary evidence provided by the DHS also establish that the Bratunac Light Infantry Brigade was involved in the extrajudicial killing of Bosniak Muslims between late 1992 and early 1993, while the respondent was serving as a company commander. We agree that this evidence is sufficient to establish that the respondent, as an individual with command responsibility, either knew or should have known of the extrajudicial killings that took place in his area of responsibility, and therefore it indicates that the respondent may be an alien described in 212(a)(3)(E)(iii)(II) of the Act. We also conclude that the respondent's incredible testimony that he was unaware of any such killings is insufficient to meet his burden to prove by a preponderance of the evidence that he is not an alien described under that section of the Act.

## C. Genocide

The respondent does not challenge the Immigration Judge's determination that the summary execution of 8,000 Bosniak Muslims in Srebrenica in July 1995 constitutes genocide within the meaning of section 212(a)(3)(E)(ii) of the Act. As previously discussed, the record shows that the Janja Special Police were responsible, in part, for those killings. The respondent's service in the Janja Special Police, in a location where its members engaged in genocide and during the time the genocide occurred, is sufficient to indicate that he may have assisted, or otherwise participated in the genocide. As before, the respondent's incredible testimony denying that he served in or around Srebrenica at that time is insufficient to meet his burden to prove by a preponderance of the evidence that he did not assist or otherwise participate in the genocide that occurred there.

## D. Asylum and Withholding of Removal

Finally, the respondent has not challenged the Immigration Judge's determination that the summary executions discussed above qualify as persecution of Bosniaks on account of a statutorily protected ground. Based on the above discussion, we conclude that the evidence presented is sufficient to indicate that the respondent may have assisted or otherwise participated in this persecution and that his incredible testimony is insufficient to prove by a preponderance of the evidence that he did not. Consequently, we agree with the Immigration Judge that the respondent is ineligible for asylum and withholding of removal because he is subject to the persecutor bar under sections 208(b)(2)(A)(i) and 241(b)(3)(B)(i) of the Act. *See Matter of J. M. Alvarado*, 27 I&N Dec. 27, 29–30 (BIA 2017) (holding that an alien who has assisted or participated in persecution based on a protected ground is subject

to the persecutor bar, without regard to the alien's personal motivation for assisting or otherwise participating in the persecution).

## IV. CONCLUSION

The DHS has presented extensive evidence showing not only that the respondent was a member of military and police units that engaged in extrajudicial killings and genocide during the Bosnian War, but also that his service in those units corresponds with the times and locations of extrajudicial killings and genocide. Based on this evidence, it was reasonable for the Immigration Judge to conclude that the respondent may have committed, ordered, incited, assisted, or otherwise participated in extrajudicial killings and genocide and, consequently, that he might be an alien described in sections 212(a)(3)(E)(ii) and (iii)(II) and 237(a)(4)(D) of the Act. Apart from his testimony, which lacks credibility, the respondent did not offer sufficient evidence to meet his burden of proving by a preponderance of the evidence that he is not an alien described in those provisions. It was also reasonable for the Immigration Judge to conclude that the respondent may have ordered, incited, assisted, or otherwise participated in persecution and that his incredible testimony does not establish by a preponderance of the evidence that he is not subject to the persecutor bar.

We will therefore uphold the Immigration Judge's adverse credibility finding and affirm her determination that the respondent has not established eligibility for a waiver of deportability under section 237(a)(1)(H) of the Act or for asylum or withholding of removal. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.