**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0675n.06

Nos. 18-4191/19-3496

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 25, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WALID ABDULAHAD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent, | ) | |

**BEFORE: McKEAGUE, GRIFFIN, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Walid Abdulahad, a 45-year-old native and citizen of Iraq who has lived in the United States since 1997, appeals two decisions of the U.S. Board of Immigration Appeals (BIA). First, he appeals the BIA's decision to uphold the denial by the Immigration Judge (IJ) of his application for asylum, withholding of removal, and deferral of removal under the Convention Against Torture (CAT). That decision likewise denied Abdulahad's motion to remand. He also appeals the BIA's later decision to deny his motion to reopen and reconsider his case.

For the reasons discussed below, we **DENY** Abdulahad's petitions for review from the BIA.

**I.**

Walid Abdulahad is a native and citizen of Iraq. Abdulahad and his family fled Iraq in 1991, and he entered the United States as a refugee in December 1997. Abdulahad adjusted his

status to that of a permanent resident in November 2000. Abdulahad is a Chaldean Christian, and he has no current ties with Iraq.

In September 2003, when in Aruba, Abdulahad was accused of attempting to export cocaine. In November 2003, an Aruban court issued an in absentia judgment imposing a fine against Abdulahad. The Aruban investigation revealed that Abdulahad had tried to smuggle over 500 grams of cocaine into the United States by securing packages of the drug to his feet before attempting to board an airplane in exchange for $1,000 to $1,500. On his return from Aruba in October 2003, the Department of Homeland Security (DHS) charged Abdulahad with inadmissibility under § 212(a)(2)(C) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1182(a)(2)(C), based on his conduct in Aruba. He was ordered removed from the United States in absentia after failing to appear at his removal hearing.

Years later, Abdulahad successfully moved to reopen his removal proceedings based on changed country conditions in Iraq. The IJ then held individual hearings on the merits of Abdulahad's applications for asylum and withholding of removal under the CAT. On November 14, 2017, the IJ held that Abdulahad's Aruban conviction was a particularly serious crime, rendering him ineligible for asylum or withholding of removal.[1] On February 28, 2018, the IJ denied Abdulahad's application for deferral of removal under the CAT and ordered that he be removed to Iraq.

Abdulahad timely appealed to the BIA, which affirmed the IJ's decision on November 20, 2018. Specifically, the BIA held (1) that Abdulahad's in absentia judgment in Aruba constitutes a conviction under INA § 101(a)(48)(A); (2) that Abdulahad was ineligible for asylum and

---

[1] The November 14, 2017 order clarified that the conviction still qualified as a particularly serious crime, even though the August 16, 2017 decision incorrectly stated that Abdulahad had been convicted of trafficking over 500 ounces rather than grams of cocaine.

withholding of removal because he had been convicted of a particularly serious crime; and (3) that Abdulahad did not demonstrate that he was eligible for deferral of removal under the CAT. Finally, the BIA denied Abdulahad's motion to remand both to consider new evidence regarding the classification of his Aruban conviction as a particularly serious crime and to apply for cancellation of removal based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

Abdulahad timely petitioned this Court for review of the BIA's November 20, 2018 decision. While his petition was pending, Abdulahad filed a timely motion to reopen and reconsider with the BIA on December 20, 2018, arguing that the BIA erred (1) in treating the Aruban judgment as a "conviction" under the INA; (2) in concluding that Abdulahad was convicted of a particularly serious crime; and (3) in denying Abdulahad's application for deferral of removal under the CAT by failing to give weight to recent State Department reports. The BIA denied the motion on May 24, 2019. The BIA reasoned that Abdulahad had largely restated his arguments from his prior appeal, in addition to noting that the BIA's unpublished decisions are not precedential and that Abdulahad's proposed new evidence was cumulative of previously submitted evidence.

Abdulahad then petitioned this Court for review of the BIA's May 24, 2019 decision. We granted his stay of removal and referred the government's motion to dismiss to the merits panel. We then consolidated the proceedings for both petitions.

We granted Abdulahad's motion to hold the case in abeyance pending a decision in *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020). After the Supreme Court issued the *Nasrallah* decision, we granted Abdulahad's motion to file supplemental briefing, and the parties supplied such briefing.

**II.**

Although we generally review only the decision of the BIA where it issues its own opinion, we review the IJ's decision directly when the BIA adopts the IJ's reasoning. *Parlak v. Holder*, 578 F.3d 457, 462 (6th Cir. 2009). We review the BIA's legal conclusions de novo but defer to its reasonable interpretations of the INA. *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). We review factual challenges to CAT orders under the highly deferential substantial-evidence standard, as the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah*, 140 S. Ct. at 1692 (quoting 8 U.S.C. § 1252(b)(4)(B)). Under the substantial-evidence standard, we will defer to the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Koulibaly*, 541 F.3d at 619 (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)). Our review of a petition for relief may be conducted "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

**III.**

#### A. Jurisdiction

The criminal alien jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) eliminates judicial review of "any final order of removal against an alien who is removable" because he or she committed a specified crime. § 1252(a)(2)(C). A court of appeals may, however, review constitutional claims or questions of law arising from a final order of removal, regardless of the removal's basis in the commission of a crime. § 1252(a)(2)(D). In *Nasrallah*, the Supreme Court clarified that § 1252(a)(2)(C) does not preclude judicial review of factual challenges to CAT orders because a CAT order is not a final order of removal. 140 S. Ct. at 1690–91. Abdulahad argues that in light

of *Nasrallah*, we have jurisdiction to review his factual challenges to the denial of his application for statutory withholding, in addition to his application for deferral of removal under the CAT.

However, we have previously held that we lack jurisdiction over factual challenges to the denial of a statutory withholding of removal. *See, e.g.*, *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692–93 (6th Cir. 2015) (holding that "objections to the agency's weighing of the facts [in the denial of statutory withholding of removal are] not within our jurisdiction to review" (citation omitted)). We must follow *Sanchez-Robles* unless "an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Guzman-Vazquez v. Barr*, 959 F.3d 253, 260 (6th Cir. 2020) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). *Sanchez-Robles* and *Nasrallah* are not inconsistent because *Nasrallah* explicitly left open the question whether courts of appeals can review factual findings in statutory withholding of removal orders. *Nasrallah*, 140 S. Ct. at 1694 ("That question is not presented in this case, and we therefore leave its resolution for another day."). Thus, we remain bound by our precedent holding that this Court does not have jurisdiction to review factual findings underlying an order denying statutory withholding of removal. We therefore accept the BIA's factual findings on withholding of removal and review only its legal conclusions.

## B. Ineligibility for Asylum and Withholding of Removal

A removable alien is ineligible for asylum and withholding of removal if the Attorney General decides that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii); *see also* 8 U.S.C. § 1231(b)(3)(B)(ii). Abdulahad challenges the BIA's holding that the Aruban in absentia judgment constitutes a "conviction" under the INA on two grounds. First, he contends

that the BIA improperly placed the burden of proof on him. Second, he argues that the lack of procedural and substantive safeguards underlying the foreign in absentia judgment should preclude the BIA from holding that the judgment is a "conviction" under the INA. As noted above, we defer to the BIA's reasonable interpretations of the INA, *Koulibaly*, 541 F.3d at 619, and we may not review the BIA's factual findings for these challenges, *Sanchez-Robles*, 808 F.3d at 692–93.

### 1. Burden of Proof

Abdulahad argues that the BIA improperly placed the burden of proof on him rather than on the Department of Homeland Security (DHS) in his December 20, 2018 motion to reopen and reconsider. First, Abdulahad contends that DHS bore the burden of proof to establish his inadmissibility because he was a returning lawful permanent resident. Abdulahad initially raised this issue in his December 20, 2018 motion to reopen and remand. He made this argument too late. It was not raised before either (1) the IJ's February 28, 2018 decision denying Abdulahad's applications for asylum, withholding of removal, and deferral of removal under the CAT, or (2) the BIA's denial of Abdulahad's motion to reopen and reconsider the same opinion. Consequently, neither of those decisions considered the burden of proof required to establish inadmissibility. Because Abdulahad forfeited this argument by not raising it when he should have done so, we do not address it. *See Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 n.1 (2017) ("[F]orfeiture is the failure to make the timely assertion of a right . . . ." (citation omitted)).

Second, Abdulahad asserts that DHS bore the burden of establishing that Abdulahad's asylum and withholding of removal applications were subject to mandatory denial. Abdulahad cites *Matter of M-B-C-*, 27 I&N Dec. 31 (BIA 2017) for this proposition. But *Matter of M-B-C-* provides that where "the record contains some evidence from which a reasonable factfinder could conclude" that grounds for mandatory denial of an application for relief apply, the noncitizen bears

the burden of proof under 8 C.F.R. § 1240.8(d) to prove by a preponderance of evidence that they do not. *Matter of M-B-C-*, 27 I&N Dec. 31, 37 (BIA 2017). Indeed, the regulation is clear: "The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d); *see also* 8 U.S.C. § 1229a(c)(4)(A); *Lucio-Rayos v. Sessions*, 875 F.3d 573, 581 (10th Cir. 2017); *Le v. Lynch*, 819 F.3d 98, 105 (5th Cir. 2016). Moreover, this Court has found that a petitioner relying on the inconclusiveness of a record of conviction will fail to establish eligibility by a preponderance of evidence. *Gutierrez v. Sessions*, 887 F.3d 770, 779 (6th Cir. 2018).

Here, the BIA recognized that the IJ had evidence of grounds for mandatory denial of an application for asylum and withholding of removal and appropriately affirmed the IJ's imposition of the burden of proof on Abdulahad to prove by a preponderance of the evidence that he had not been convicted of a particularly serious crime. Abdulahad argues that the alleged ambiguity of his Aruban court record renders DHS incapable of meeting its burden of proof, but the BIA found no ambiguity in the Aruban conviction record. We cannot review that factual finding.

Finally, Abdulahad argues that DHS bore the burden of establishing the foreign law underlying his foreign conviction. That argument is subsumed by his initial argument that DHS bore the burden of proof to establish that his conviction warranted a finding of inadmissibility, which was not at issue in the BIA and IJ decisions below.

## 2. Procedural and Substantive Safeguards

Abdulahad also contends that the Aruban judgment does not qualify as a "conviction" under the INA because the judgment lacked sufficient procedural and substantive safeguards. The § 1252(a)(2)(C) jurisdictional bar does not preclude review of a question of statutory interpretation, or de novo review of the application of law to fact. *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir. 1996) (reviewing de novo the question whether a conviction was "particularly serious"); *see also Saleh v. Sessions*, 756 F. App'x 502, 506 (6th Cir. 2018). The INA considers an alien to have a conviction if a court has entered a "formal judgment of guilt . . . or, if adjudication of guilt has been withheld, where— (i) . . . the alien has entered a plea of guilty . . . or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has entered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A). The BIA explained that immigration law does not require a foreign conviction to "conform to the constitutional guarantees of the United States." The BIA further clarified that although in absentia judgments may require further inquiry into the proceeding's fairness, no categorical rule bans in absentia foreign convictions in removal proceedings.

Abdulahad argues that the Aruban judgment does not amount to a "conviction" because he was not just tried in absentia; he also he lacked counsel and the rights to a jury, to question witnesses, to challenge evidence, and to present a defense. Contrary to Abdulahad's claims, the BIA found that "Aruban authorities conducted an extensive investigation" into Abdulahad's story, "which the sentencing court considered in announcing its judgment." Rather than simply being deported before being able to defend himself, Abdulahad "reach[ed] an 'arms-length' deal with the prosecution to have his case 'streamlined' so that he could avoid further detention and leave Aruba sooner." Moreover, Abdulahad points to nothing that would have prevented him from

returning to Aruba to defend himself from the judgment. Because we defer to the BIA's reasonable interpretations of the INA, Abdulahad's argument that the Aruban judgment may not qualify as a "conviction" precluding asylum and statutory withholding from removal fails. *See Koulibaly*, 541 F.3d at 619.

### 3. Present Dangerousness as Part of the Seriousness of a Past Crime Analysis

Abdulahad next argues that even if the Aruban judgment is a conviction, the BIA should not have treated it as a "particularly serious" conviction that triggered his ineligibility for both asylum and withholding of removal. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Abdulahad raises a question of statutory interpretation, and the BIA's determination that a judgment is particularly serious requires the application of law to fact, so this Court reviews the determination de novo. *Hamama*, 78 F.3d at 239; *Saleh*, 756 F. App'x at 506. Thus, we apply *Chevron* analysis to the BIA's interpretation of the INA and its regulations and "defer to [its] reasonable interpretation of a statute it administers unless 'the intent of Congress is clear.'" *Saleh*, 756 F. App'x at 508 (quoting *Hamama*, 78 F.3d at 239). Deference likewise calls us to uphold the BIA's applications of the INA to particular cases unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* (quoting *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)).

The attorney general may "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). The attorney general makes these determinations on a case-by-case basis through BIA decisions. *Saleh*, 756 F. App'x at 507. The BIA "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction" to ascertain whether a crime is particularly serious. *Id.* (quoting *In re N-A-M*, 24 I. & N. Dec. 336, 342 (BIA 2007)). After the BIA determines that the offense may be within the realm of particularly serious crimes,

the BIA may consider "all reliable information," including conviction records, sentencing information, and information outside the conviction record. *Id.* at 508 (quoting *In re N-A-M*, 24 I. & N. Dec. at 342)).

In *Hamama*, this court deferred to the BIA's holding that the "danger to the community" component of § 1158(b)(2)(A)(ii) and § 1231(b)(3)(B) "informs the inquiry into the crime's seriousness, rather than [serving as] a separate requirement." 78 F.3d at 240. Abdulahad requests that we reconsider *Hamama*'s application of *Chevron* deference to the BIA because he reads the statute to unambiguously require that the alien must both have been convicted of "a particularly serious crime" *and* have been found a "danger to the community of the United States." §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); Petitioner Br. at 28. He argues that if the BIA need not consider both factors, half of the statute is rendered meaningless surplusage. Nevertheless, because a published decision of our court has already established that the BIA's interpretation of § 1158(b)(2)(A)(ii) and § 1231(b)(3)(B)(ii) survives *Chevron* deference, we must apply it here. *See Guzman-Vazquez*, 959 F.3d at 260. Accordingly, we reject Abdulahad's argument.

Next, Abdulahad argues that his conviction is not particularly serious under the test in *Matter of Y-L-*, 23 I&N Dec. 270, 276 (A.G. 2002). Although Abdulahad contends that the IJ did not permit testimony on the circumstances of the offense, the BIA refutes Abdulahad's arguments based on his record of conviction. Specifically, the BIA explained that over 500 grams of cocaine is not a small quantity; $1,000 to $1,500 is not a "very modest amount of money," and taping packages to his feet before attempting to board an airplane is not "peripheral involvement." That analysis demonstrates reliance on "reasonable, substantial, and probative evidence on the record considered as a whole," regardless of whether Abdulahad was allowed to submit additional testimony. *See Koulibaly*, 541 F.3d at 619.

10

We therefore **DENY** Abdulahad's petition for review with regard to the BIA's decision denying his requests for asylum and withholding of removal.

## C. CAT Relief

The Convention Against Torture prohibits the removal of an alien to a country where he or she would more likely than not be tortured. 8 C.F.R. §§ 208.16(c), 208.17(a). The implementing regulations define "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." § 208.18(a)(1)– (2); *see also id.* § 208.18(a)(3)–(8). In contending that the BIA erred in denying his request for deferral of removal under the CAT, Abdulahad raises four issues. We will address each in turn.

### 1. The Effect of *Yousif v. Lynch*

Abdulahad points to this Court's statement in *Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015), that an applicant's "status as a Christian alone entitles him to withholding of removal, given that there is 'a clear probability' that he would be subject to future persecution if returned to contemporary Iraq." 796 F.3d at 628. Abdulahad argues that that statement was binding on the BIA, and that the BIA's failure to acknowledge or distinguish the case requires a remand to allow the agency to explain why it departed from *Yousif*.

We later clarified that our statement in *Yousif* did not "'establish an entitlement to withholding of removal for all time' for all Chaldean Christian Iraqis." *Marqus v. Barr*, 968 F.3d 583, 588 (6th Cir. 2020) (quoting *Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019)). Instead of applying a categorical approach, the BIA properly considered whether Abdulahad established that he would more likely than not be tortured upon being removed to Iraq.

11

**2. Arbitrariness**

Next, Abdulahad argues that the BIA acted arbitrarily by reaching "inconsistent results in identical cases." Abdulahad refers to three unpublished BIA decisions, as well as one IJ decision on remand following appeal, all from 2018, that he submitted with his motion to reopen and reconsider. He claims that because he shares similar characteristics with the applicants in these cases—Chaldean Christians who have lived in the United States for a long time, with similar convictions and strong ties to the United States—the BIA should treat his case in the same manner and remand it. More specifically, he asserts that the BIA should remand to allow the IJ to treat two of his offered witnesses, Rebecca Heller and Daniel Smith, as experts rather than as percipient witnesses.

Unpublished, single-member BIA decisions are not binding on the BIA. *Hernandez v. Whitaker*, 914 F.3d 430, 433 (6th Cir. 2019). Thus, Abdulahad does not argue that the BIA violated its own precedent, but rather contends that the BIA acted arbitrarily by failing to treat his case similarly to his proposed cases, at least without explaining its reasoning. *See Ishac*, 775 F. App'x at 788. To survive review for arbitrariness, the agency must "examine relevant evidence or articulate a satisfactory explanation for the decision." *Faso v. Barr*, 823 F. App'x 321, 325 (6th Cir. 2020) (quoting *Jomaa v. United States*, 940 F.3d 291, 296 (6th Cir. 2019)).

In *Ishac*, the applicant made the same argument based on the same four cases. 775 F. App'x at 788. The reasoning in *Ishac* applies here: we need not apply consistency doctrine because the three unpublished decisions are distinguishable from Abdulahad's case. Unlike in the cited decisions, Abdulahad submitted the three unpublished BIA decisions in his subsequent motion to reopen and reconsider but "never presented [them] to the IJ and so [they] cannot constitute a basis for reversing the IJ's decision." *Id.* at 789. In *Ishac*, this Court also distinguished the applicant's

12

case from the cited IJ decision because the applicant's lawyer had failed to offer a sustained objection to the decision not to qualify the applicant's witnesses as experts. *Id.* Here, the government objected to the introduction of Daniel Smith and Rebecca Heller as expert witnesses. With regard to Heller, when asked to respond to the objection to Heller's admission as an expert, Abdulahad's attorney failed to do so, instead simply stating, "And at the very least, if your honor decides not to admit them as expert—as an expert declaration, that this court give it whatever weight it see fit." Thus, the reasoning in *Ishac* applies to the disqualification of Heller as an expert witness. When asked to respond to the objection to Smith's admission as an expert, however, Abdulahad's attorney maintained that Smith should be admitted as an expert. Although the BIA in *Matter of T-H-H-*, AXXX-XXX-601 (BIA Aug. 27, 2018) considered Smith qualified as a witness, "'one inconsistent precedent' doesn't make a decision arbitrary and capricious," *Faso*, 823 F. App'x at 325 (citation omitted), and "some degree of inconsistency is 'unavoidable,'" *Nissan v. Barr*, 788 F. App'x 365, 367 (6th Cir. 2019) (citation omitted).

### 3. The Role of U.S. Department of State Reports

Abdulahad argues that the BIA failed to give appropriate weight to certain U.S. Department of State reports and failed to explain its disregard of those reports. This Court has recognized that "State Department reports are generally the best gauge of conditions in foreign countries." *Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012); *see also Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 213 (BIA 2010) ("State Department reports on country conditions . . . are highly probative evidence and are usually the best source of information on conditions in foreign nations."). The State Department's 2017 International Religious Freedom Report and the 2018 Country Report on Human Rights Practices were issued after the IJ's decision, but Abdulahad submitted the former with his motion to reopen and reconsider, and the latter with his motion to remand as part of his

original appeal to the BIA. This Court reviews the BIA's denial of both motions to remand to consider new evidence and motions to reopen under an abuse-of-discretion standard. *Kada v. Barr*, 946 F.3d 960, 963 (6th Cir. 2020); *Marqus*, 968 F.3d at 592.

The BIA explained that the country conditions reports were cumulative of evidence already presented to the IJ, which the IJ addressed.[2] In its decision on the motion to reopen and reconsider, the BIA likewise explained that the 2018 Country Report on Human Rights Practices was cumulative. The BIA provided sound reasoning as to why the new State Department reports did not warrant remand or reopening of the case, and nothing in Abdulahad's brief negates this reasoning. Thus, the BIA did not abuse its discretion in refusing to remand or reopen Abdulahad's case.

### 4. Likelihood of Torture in Iraq

Abdulahad challenges the BIA's factual finding that he failed to show that he more likely than not will be tortured by Iraqi officials upon removal to Iraq. Abdulahad argues that he faces a particularized threat of torture from Iraqi government officials because of his status as a Chaldean Christian, his long period of residence in and family ties to the United States, his lack of ties to Iraq, his drug conviction, and the notoriety of "the planned mass removals of Iraqis."

To qualify for deferral of removal under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Namo v. Gonzales*, 401 F.3d 453, 457 (6th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). A court will consider all relevant evidence pertaining to the possibility of future torture, such as

> (i) evidence of past torture inflicted on the applicant; (ii) evidence that the applicant could relocate to a part of the country where he is likely not to be tortured;

---

[2] Specifically, the BIA stated: "This new evidence further confirms the [IJ's] determination that the Iraqi government is making efforts to combat emerging ISIS cells and that, despite worries of another ISIS resurgence, the group remains 'routed to all but small portions of Iraq' . . . even if the present efforts to eradicate ISIS are not completely successful, the inability to control ISIS is not necessarily indicative of acquiescence."

(iii) evidence of gross, flagrant or mass violations of human rights within the country to which the applicant will be removed; and, (iv) other relevant information about the country to which the applicant will be removed.

*Id.* (citing 8 C.F.R. § 1208.16(c)(3)). Moreover, an applicant must show that he faces a "particularized . . . threat of torture at the hands of a public official, or with [a public official's] consent or acquiescence" to receive CAT relief. *Marqus*, 968 F.3d at 587. A reviewing court examines whether an applicant for CAT relief met his burden of proof under the substantial-evidence standard: whether a "reasonable adjudicator would be compelled to decide that" the applicant more likely than not will be tortured in his country of removal. *Id.* at 588.

In *Marqus*, this Court deferred to the IJ's factual findings on the record where the applicant requested that the Court "reweigh the evidence," and the government offered "its own credible body of evidence." 968 F.3d at 589. Like the applicant in *Marqus*, Abdulahad essentially asks that we reweigh the evidence. This we will not do. The BIA explained that the IJ considered DHS's experts, who had more recent firsthand experiences in Iraq, to be more persuasive than Abdulahad's evidence and experts. Indeed, the IJ reasoned that while much of Abdulahad's evidence pointed to discrimination and mistreatment against Christians, the mistreatment did not constitute torture. The IJ further considered evidence that ISIS had been "routed from all but a small portion of Iraq," and that while Popular Mobilization Forces (PMF) militias have committed human rights violations against Christians, the record showed that the PMF's primary target is ISIS. Because Abdulahad has lived in the United States for most of his life, he would not be suspected of being involved with ISIS. Moreover, the government offered evidence that although extremist groups such as ISIS and the PMF have historically tortured religious minorities, the Iraqi government neither instigated nor acquiesced to that conduct; on the contrary, the Iraqi military has opposed it. As in *Marqus*, the government provided its own credible body of evidence.

968 F.3d at 589. Thus, Abdulahad fails to overcome the highly deferential substantial-evidence standard on his CAT claim.

Accordingly, we **DENY** Abdulahad's petition for review of the BIA's denial of his request for CAT relief.

#### D. Abdulahad's Motion to Reopen and Reconsider

Finally, Abdulahad argues that the BIA erred in denying his motion to reopen and reconsider. Specifically, he claims that the BIA failed to accept the facts set forth in his motion to reopen and reconsider as true. The BIA must treat "reasonably specific facts" submitted in a motion to reopen as true unless "it finds those facts to be inherently unbelievable." *Pablo Lorenzo v. Barr*, 779 F. App'x 366, 373 (6th Cir. 2019) (quoting *Trujillo Diaz v. Sessions*, 880 F.3d 244, 252 (6th Cir. 2018)). We review motions to reopen under an abuse-of-discretion standard. *Kada*, 946 F.3d at 963.

Abdulahad fails to point to specific facts that the BIA failed to accept as true for the purpose of the motion to reopen. In fact, the BIA explained that the new evidence was not likely to change the case's outcome, as the 2018 State Department Report was "largely cumulative," and the additional offered evidence failed to demonstrate that Abdulahad would be specifically targeted for torture or persecution. Such an explanation does not suggest that the BIA did not accept the evidence as true.

**IV.**

For the foregoing reasons, we **DENY** Abdulahad's petitions for review.